IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

GIANINNA GALLARDO, an incapacitated person, by and through her parents and co-guardians, PILAR VASSALLO and WALTER GALLARDO,

    Plaintiff,
vs.

Case No.: 4:16-cv-116-MW-CAS

ELIZABETH DUDEK, in her official capacity as Secretary of the STATE OF FLORIDA, AGENCY FOR HEALTH CARE ADMINISTRATION,

    Defendant.
_____/

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Defendant ELIZABETH DUDEK, in her official capacity as Secretary of the STATE OF FLORIDA, AGENCY FOR HEALTH CARE ADMINISTRATION ("Agency"), files this Memorandum in Support of Defendant's Motion for Summary Judgment, stating:

**INTRODUCTION**

Plaintiff GIANINNA GALLARDO, an incapacitated person, by and through

1

her parents and co-guardians, PILAR VASSALLO and WALTER GALLARDO ("Gallardo") brought this action seeking injunctive and declaratory relief against Defendant ELIZABETH DUDEK, in her official capacity as Secretary of the STATE OF FLORIDA, AGENCY FOR HEALTH CARE ADMINISTRATION ("Agency") to limit the amount of reimbursement payable to the Agency.

Citations to the Complaint (Document # 1) will appear as: (C. [page number] [paragraph number]).

## STATEMENT OF CASE AND FACTS

Gallardo was catastrophically injured in an accident. (C. p. 11 ¶ 29). The Agency, through its Medicaid program, provided medical assistance to Gallardo in relation to her injuries in the amount of $862,688.77. (C. p. 12 ¶ 31). Gallardo, through her parents, brought suit against the liable parties, and settled the suit for a total of $800,000. (C. p. 12-13 ¶¶ 33, 35). The Agency was assigned Gallardo's right to recover from the liable third-parties the medical assistance provided by Medicaid. (C. p. 17 ¶ 41). The Agency asserted its lien against Gallardo's settlement recovery for the amount of medical assistance it has provided. (C. p. 17 ¶ 42).

Under Florida law, § 409.910(11)(f), Fla. Stat., the Agency is due approximately $300,000 in reimbursement from Gallardo's $800,000 settlement

recovery. (C. p. 18 ¶ 47). Under Florida law, § 409.910(17), Fla. Stat., Gallardo sought to challenge the amount of her settlement due the Agency in an administrative action. (C. p. 18 ¶ 48).

## ARGUMENT

### 1. Background and the Anti-Lien Statute

This matter involves the interpretation of federal Medicaid statutes, which is not an easy task.[1]

Federal law requires a state Medicaid program (in Florida, the Agency) to seek reimbursement of its medical assistance expenditures when a third-party is liable. *See* 42 U.S.C. §§ 1396a(a)(25)(A, B, H), 1396k(a, b).

---

[1] The U.S. Supreme Court has explained that "The Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction, as Judge Friendly has observed, makes the Act 'almost unintelligible to the uninitiated.'" *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981) (citations omitted). The Supreme Court also quoted a district court to describe the Medicaid statutes as "an aggravated assault on the English language, resistant to attempts to understand it." *Id*. at 43 n. 14 (citations omitted). The Fourth Circuit Court of Appeals noted: "There can be no doubt but that the statutes and provisions in question, involving the financing of Medicare and Medicaid, are among the most completely impenetrable texts within human experience," and called the statutes "dense reading of the most tortuous kind." *Rehabilitation Ass'n of Virginia, Inc. v. Kozlowski*, 42 F.3d 1444, 1450 (U.S. 4th Cir. 1994).

To do so, Florida law creates and asserts an assignment right, a subrogation right, and a lien right to effectuate the Agency's reimbursement from liable third-parties for the medical assistance provided under the state plan. *See* § 409.910(6), Fla. Stat.

The federal anti-lien statute of 42 U.S.C. § 1396p(a)(1) prohibits states from imposing a lien against the property of a Medicaid recipient, before death, on account of medical assistance provided[2]. This statute was interpreted by the United States Supreme Court in *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268 (2006). The Court interpreted the anti-lien statute, in the context of the federal laws that <u>require</u> reimbursement, to prohibit a state Medicaid program from obtaining reimbursement from the portion of the recipient's recovery that represent non-medical expenses. *Id*.

The federal anti-lien statute returned in *Wos v. E.M.A.*, 133 S. Ct. 1391 (2013), when the Supreme Court determined that a state statute may not

---

[2] There is also an "anti-recovery statute" at 42 U.S.C. § 1396p(b), although not relied upon by the parties in *Ahlborn* or *Wos*, the Supreme Court suggests that the same exception carving analysis for the anti-lien statute applies to the anti-recovery statute. The Court explains that "[r]ead literally and in isolation," the anti-lien statute would prohibit any lien, *Ahlborn*, 547 U.S. at 284. In a footnote to this statement, the Court explains that there is also the provision of § 1396p(b), which would appear to do the same. *Id*. at 284 n. 13.

4

irrebuttably determine the medical expense portion of a recovery.

The Florida appellate courts applied *Wos* to the Florida statutes to "hold that a plaintiff must be given the opportunity to seek reduction of the amount of a Medicaid lien established by the statutory formula outlined in section 409.910(11)(f), by demonstrating, with evidence, that the lien amount exceeds the amount recovered for medical expenses." *Harrell v. State*, 143 So. 3d 478 (Fla. 1st DCA 2014).

Florida law was amended to allows a Medicaid recipient to prove the amount of his or her recovery that represents past and future medical expenses, and upon doing so, may limit the Agency's reimbursement to that amount. Ch.2013–150 § 2, at 1718–19, Laws of Fla. The statute, now in conformance with *Ahlborn*, *Wos*, and federal law, makes Florida's statutory formula rebuttable. *See* § 409.910(17)(b), Fla. Stat.

### 2. Federal Law Requiring Reimbursement

Medicaid is a taxpayer-funded, joint federal-state social welfare program providing medical coverage to individuals who cannot afford to pay their own medical costs. *Arkansas Dept. of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 275 (2006). In 2006, state and federal Medicaid spending totaled an estimated $320 billion. *See Retail Indus. Leaders v. Fielder*, 475 F.3d 180, 198

(4th Cir. 2007), (Michael, J., dissenting). With the number of Medicaid qualified individuals on the rise, states are struggling to recover the funds necessary to maintain this critical source of public benefits. *See Id.* at 198-99.

Under the Medicaid program, the federal government reimburses a portion of the states' expenses, requiring the states to comply with the applicable federal rules and regulations. *Ahlborn*, 547 U.S. at 275; *see also*, 42 U.S.C. § 1396a (providing the criteria for state Medicaid programs). The federal government may issue penalties to a state for not following the guidelines by reducing or withholding federal funding. 42 U.S.C. § 1396c; *see also* 42 C.F.R. § 433.140(a)(1) (funding to be withheld from a state for failure to conduct third-party reimbursement operations).

To maintain the viability of the Medicaid Program, federal law requires states to enact legislation to secure Medicaid's reimbursement from recipients' settlements with, or judgments or awards against, liable third-parties. *See* 42 U.S.C. § 1396a(a)(25). The Medicaid act requires states to have laws in effect such that to the extent the state Medicaid program has provided medical assistance, the state has acquired the rights of the Medicaid recipient to reimbursement from legally liable third parties. 42 U.S.C. § 1396a(a)(25)(H). It also requires states to seek reimbursement when a third party's liability is found after medical assistance

is provided. 42 U.S.C. § 1396a(a)(25)(A-B). Federal law requires that "any amount collected by the State . . . shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual." 42 U.S.C. § 1396k(b). To accomplish this, federal law mandates that participating states <u>require</u> Medicaid recipients to assign their rights to claims against third-parties in order to qualify for Medicaid assistance. *See* 42 U.S.C § 1396k(a)(1)(A).

### 3. *Ahlborn* Limits Reimbursement to the Recovery for Medical Expenses

In *Arkansas Department of Health and Human Services v. Ahlborn*, 547 U.S. 268 (2006), the U.S. Supreme Court was presented with the question of whether the federal anti-lien statute makes a state Medicaid program's lien unenforceable when the lien exceeds the recovery for medical costs. *Id*. at 272. The Court explained that the anti-lien would ban a lien on all portions of a recipient's settlement, but that to the extent it is authorized by other federal statutes, an exception to the anti-lien statute is created. *Id*. at 284.

Heidi Ahlborn was injured, and the state of Arkansas provided medical assistance through its Medicaid program. *Id*. at 272-73. Arkansas sought reimbursement of the full amount of what it paid from Ahlborn's settlement with the parties liable for her injuries. *Id*. at 274. Raising the anti-lien statute, Ahlborn sought to limit reimbursement to Arkansas. *Id*. Ahlborn and Arkansas stipulated to

7

the amount of Ahlborn's recovery due if either party's interpretation was correct. *Id*. at 274.

In reconciling the anti-lien statute with the requirement to seek reimbursement, the Supreme Court explains Ms. Ahlborn's position as allowing the lien on the portion of her recovery "designated as payments for medical care." *Ahlborn*, 547 U.S. at 284. To this proposition the Court explicitly states, "[w]e agree." *Id*.

On the question before it, the Court is direct: "To the extent that forced assignment is expressly authorized by the terms of §§ 1396a(a)(25) and 1396k(a), it is an exception to the anti-lien provision." *Id*. This "exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care." *Id*. at 284-85. It is only for other portions—the non-medical care portions—of the recipient's settlement that the anti-lien statute applies. *Id*.

Throughout its opinion the Supreme Court characterizes the portions of the recovery, contrasting what the statutes allow reimbursement from (using the unqualified term "medical expenses," or "medical costs") against examples of what the statutes do not allow reimbursement from (never stating future medical expenses):

> Read literally and in isolation, the anti-lien prohibition contained in § 1396p(a) would appear to ban even a lien on that portion of the settlement proceeds that represents payments for medical care.

*Id*. at 284;

> Again, the [exception carving] statute does not sanction an assignment of rights to payment for anything other than medical expenses—not lost wages, not pain and suffering, not an inheritance.

*Id*. at 281;

> The State, through this statute, claims an entitlement to more than just that portion of a judgment or settlement that represents payment for medical expenses. It claims a right to recover the entirety of the costs it paid on the Medicaid recipient's behalf. Accordingly, if, for example, a recipient sues alone and settles her entire action against a third-party tortfeasor for $20,000, and ADHS has paid that amount or more to medical providers on her behalf, ADHS gets the whole settlement and the recipient is left with nothing. This is so even when the parties to the settlement allocate damages between medical costs, on the one hand, and other injuries like lost wages, on the other.

*Id*. at 278; and:

> When that amount exceeds the portion of the settlement that represents medical costs, satisfaction of the State's lien requires payment out of proceeds meant to compensate the recipient for damages distinct from medical costs—like pain and suffering, lost wages, and loss of future earnings.

*Id*. at 272. These provisions distinguish medical expenses or medical costs, with

9

the portions of the recovery that are obviously not for medical expenses or medical costs. The Court avoided stating that a state's lien is limited to the past-only medical expense portion of the recovery. Speculation can only answer why the Court chose to omit the word "past," if that is what it meant.

Instead, the language of the exception carving statutes talks more generally than past medical expenses, and this is a better explanation for why the Court did not qualify the term medical expenses:

> We must decide whether [the state Medicaid program] can lay claim to more than the portion of Ahlborn's settlement that represents medical expenses. The text of the federal third-party liability provisions suggests not; it focuses on recovery of payments for medical care.

*Id*. at 280;

> Medicaid recipients must, as a condition of eligibility, 'assign the State any rights ... to payment for medical care from any third party,' 42 U.S.C. § 1396k(a)(1)(A) (emphasis added), not rights to payment for, for example, lost wages.

*Id*. at 280, (emphasis in original);

> Accordingly, what § 1396k(b) requires is that the State be paid first out of any damages representing payments for medical care before the recipient can recover any of her own costs for medical care.

*Id*. at 282, (emphasis provided);

10

> [§ 1396k(b)] does not authorize the State to demand reimbursement from portions of the settlement allocated or allocable to nonmedical damages; instead, it gives the State a priority disbursement from the medical expenses portion alone.

*Id.* at 291; and

> At the very least, then, the federal third-party liability provisions <u>require</u> an assignment of no more than the right to recover that portion of a settlement that represents payments for medical care.

*Id*. at 282.

But, to be sure, the Court was not uncertain as to what the Medicaid recipient was suing for. It acknowledged that "[Ahlborn] claimed damages not only for past medical costs, but also for permanent physical injury; future medical expenses; past and future pain, suffering, and mental anguish; past loss of earnings and working time; and permanent impairment of the ability to earn in the future." *Id*. at 273. In limiting the state programs to the portion for plain "medical expenses," the *Ahlborn* Court combined past and future medical expenses into one category of damages.

### 4. *Wos* Ensures Recipients May Prove the Amount Recovered for Medical Expenses

When the anti-lien statute returned to the Supreme Court in *Wos v. E.M.A.*, 133 S. Ct. 1391 (2013), the Supreme Court did not change its analysis as to past versus future medical expenses.

11

Unlike the *Ahlborn* case, the *Wos* case concerned not what <u>portion</u> of the recipient's recovery that the state may encumber but how that portion may be determined. The Court held that a Medicaid recipient must be able to rebut any statutory determination of the medical expense portion of his or her recovery, and limit the state program to that amount. *Id*. at 1401-02.

The court retained its use of the general "medical expense" term to limit the state Medicaid programs:

> [T]he anti-lien provision protects from state demand the portion of a beneficiary's tort recovery that [a] stipulation or judgment does not attribute to <u>medical expenses</u>.
>
> North Carolina's statute, however, operates to allow the State to take one-third of the total recovery, even if a proper stipulation or judgment attributes a smaller percentage to <u>medical expenses</u>.

*Id*. at 1399, (emphasis provided). The Court discusses how the statutory formula amount could exceed that amount truly representing medical expenses, which would conflict with the anti-lien statute. To this the Court says, "[a]n irrebuttable, one-size-fits-all statutory presumption is incompatible with the Medicaid Act's <u>clear mandate</u> that a State may not demand any portion of a beneficiary's tort recovery except the share that is attributable to <u>medical expenses</u>." *Id*. (emphasis provided). The Court states quite succinctly that the Medicaid statutes "clear[ly] mandate" that the Medicaid program is limited to the portion of the recovery

representing simply "medical expenses." *Id*. That is the clear mandate according to the Court.

Although recognizing that E.M.A.'s injuries require "skilled home care," the *Wos* Court does not categorize this as future medical expenses. *Id*. The Court also recognizes that E.M.A. and her parents would have other tort claims, which may need to be considered to determine what amount of the recovery is attributable to medical expenses. *Id*.

The *Wos* court points to various states' laws and programs that do a better job complying with *Ahlborn* than the North Carolina statute. *Id*. at 1401. The Court cites to these and quotes only one. *Id*. It selects Oklahoma's use of plain "medical expenses" in their statute: "full reimbursement 'unless a more limited allocation of damages to medical expenses is shown by clear and convincing evidence.'" Id. (quoting Okla. Stat., Tit. 63, § 5051.1(D)(1)(d)). The *Wos* court avoids holding any of the state's methods compliant with the federal Medicaid statutes, but its focus on them suggests it would agree with their methods under the arguments that were presented in *Wos* and *Ahlborn*. *Id*.

In the end, the *Wos* court returns to the language of *Ahlborn*: "In some circumstances, however, [North Carolina's] statute would permit the State to take a portion of a Medicaid beneficiary's tort judgment or settlement not 'designated as

13

payments for <u>medical care</u>.' *Ahlborn,* 547 U.S., at 284, 126 S.Ct. 1752. The Medicaid anti-lien provision, 42 U.S.C. § 1396p(a)(1), bars that result." *Id*. at 1402. (emphasis provided).

### 5. **The Statutes Carving the Exception to the Anti-Lien Statute**

The Supreme Court in *Ahlborn* and *Wos* looked to the various federal statutes that <u>require</u> reimbursement to the state and federal Medicaid programs. These statutes would conflict with the anti-lien statute, which would otherwise "ban even a lien on that portion of the settlement proceeds that represents payments for medical care." *Ahlborn*, 547 U.S. at 284. To resolve the conflict, the Supreme Court considers these statutes requiring reimbursement to create an exception to the anti-lien statute. *Id*.

These statutes provide:

> (a) A State plan for medical assistance must—
> . . .
> (25) provide—
> (A) that the State or local agency administering such plan will take all reasonable measures <u>to ascertain the legal liability of third parties</u> (including health insurers, self-insured plans, group health plans (as defined in section 607(1) of the Employee Retirement Income Security Act of 1974 [29 U.S.C. 1167(1)]), service benefit plans, managed care organizations, pharmacy benefit managers, or other parties that are, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service) <u>to pay for care and services available under the plan</u>, including—

14

> (i) the collection of sufficient information (as specified by the Secretary in regulations) to enable the State to pursue claims against such third parties, with such information being collected at the time of any determination or redetermination of eligibility for medical assistance, and
> (ii) the submission to the Secretary of a plan (subject to approval by the Secretary) for pursuing claims against such third parties, which plan shall be integrated with, and be monitored as a part of the Secretary's review of, the State's mechanized claims processing and information retrieval systems required under section 1396b(r) of this title;
> (B) that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, <u>the State</u> or local agency <u>will seek reimbursement for such assistance to the extent of such legal liability</u>;
> . . .
> (H) that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services; and
> . . .

42 U.S.C. § 1396a. These provisions require the State to seek reimbursement to the extent it has provided medical assistance—obviously it is neither required nor allowed to be reimbursed <u>more</u> than what it has actually expended. But, whether it

15

may be reimbursed <u>for</u> what it has expended <u>from</u> the portions for other medical expenses is an open question under this section. Even if this section only requires a state program to seek reimbursement to the extent of a third-party's liability for what Medicaid has provided, it is not the only section that carved an exception to the anti-lien statute.

The other section that the Supreme Court considers as creating an exception to the anti-lien statute, carves a larger exception:

> (a) For the purpose of assisting in the collection of medical support payments and other payments for medical care owed to recipients of medical assistance under the State plan approved under this subchapter, a State plan for medical assistance shall—
> (1) provide that, as a condition of eligibility for medical assistance under the State plan to an individual who has the legal capacity to execute an assignment for himself, the individual is required—
> (A) to assign the State <u>any rights</u>, of the individual or of any other person who is eligible for medical assistance under this subchapter and on whose behalf the individual has the legal authority to execute an assignment of such rights, to support (specified as support for the purpose of medical care by a court or administrative order) and <u>to payment for medical care</u> from any third party;
> . . .
> (C) to cooperate with the State in identifying, and providing information to assist the State in pursuing, any third party who may be liable to pay for care and services available under the plan, unless such individual has good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the

> Secretary, which standards shall take into consideration the best interests of the individuals involved; and
>
> . . .
>
> (b) Such part of <u>any amount collected by the State under an assignment made under the provisions of this section shall be retained by the State as is necessary to reimburse it for medical assistance payments made on behalf of an individual with respect to whom such assignment was executed</u> (with appropriate reimbursement of the Federal Government to the extent of its participation in the financing of such medical assistance), and the remainder of such amount collected shall be paid to such individual.

42 U.S.C. § 1396k. This federal law requires state law to provide that Medicaid recipient "is required" "to assign the State <u>any rights</u>" "<u>to payment for medical care</u> from any third party." Because it is <u>any</u> right to medical care, it must include the right to past medical care <u>and</u> the right to future medical care. State laws that do precisely this, and go no further, cannot be in conflict with the anti-lien statute under *Ahlborn*.

Further, the federal law allows the state program to keep <u>as much</u> of what it may collect under the section (which, as explained above, is <u>any</u> amount for medical care) as is necessary for it to be reimbursed. Thus, under § 1396k, the state is to collect everything that represents payments for medical care, and from that the state is to be reimbursed up to as much as it has paid in benefits.

The *Ahlborn* court recognized this. The Court explained that while limited to the medical expense portion of the recipient's recovery, the state has a priority

17

disbursement from the medical expense portion: "[§ 1396k(b)] does not authorize the State to demand reimbursement from portions of the settlement allocated or allocable to nonmedical damages; instead, it gives the State a priority disbursement from the medical expenses portion alone." *Ahlborn*, 547 U.S. at 291.

This federal law is what makes the exception to the anti-lien statute, therefore compliance with this federal law cannot run afoul of the anti-lien statute.

## **CONCLUSION**

Federal law limits a state Medicaid program to reimbursement from the entire medical expense portion of a recipient's recovery. Conflicting federal statutes require and limit reimbursement. The Supreme Court in *Ahlborn* held that to the extent the statutes allow reimbursement, they create an exception to the statutes limiting reimbursement.

42 U.S.C. § 1396k, specifically, requires reimbursement from <u>any rights</u> the recipient has to <u>any medical care</u> from any third party. This necessarily includes past and future medical care. It further allows the state Medicaid program to be reimbursed out of this medical care portion with priority.

Because Florida's statute allows the Agency to be reimbursed the amount of its lien from the entire past and future portion of Gallardo's recovery, but no further into the non-medical expense portion, as a matter of law, the statute is <u>not</u>

in violation of the federal Medicaid act.

Respectfully submitted this 16th day of August, 2016.

/s/ Alexander R. Boler
Alexander R. Boler
Florida Bar No.: 111374
2073 Summit Lake Drive, Suite 300
Tallahassee, Florida 32317
Phone: (801) 352-5038
Fax: (850) 201-1411
E-mail: FLTPLLEGAL@xerox.com
E-mail: alexander.boler@xerox.com
*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this memorandum complies with Local Rules 56.1(E) and 7.1(F). This memorandum contains 3995 words, as counted by a word-processing system, including headings, footnotes, and quotations, excluding the case style, signature blocks, and certificates. The motion this memorandum supports does not exceed 500 words.

/s/ Alexander R. Boler
Alexander R. Boler
Florida Bar No.: 111374
2073 Summit Lake Drive, Suite 300
Tallahassee, Florida 32317
Phone: (801) 352-5038
Fax: (850) 201-1411
E-mail: FLTPLLEGAL@xerox.com
E-mail: alexander.boler@xerox.com
*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by electronic mail to the following on this 16th day of August, 2016:

Floyd B. Faglie
Staunton & Faglie, PL
189 E. Walnut Street
Monticello, Florida 32344
faglielaw@earthlink.net
*Counsel for Plaintiff*

Bryan S. Gowdy
Creed & Gowdy, P.A.
865 May Street
Jacksonville, Florida 32204
bgowdy@appellate-firm.com
filings@appellate-firm.com
*Counsel for Plaintiff*

/s/ Alexander R. Boler
Alexander R. Boler
Florida Bar No.: 111374
2073 Summit Lake Drive, Suite 300
Tallahassee, Florida 32317
Phone: (801) 352-5038
Fax: (850) 201-1411
E-mail: FLTPLLEGAL@xerox.com
E-mail: alexander.boler@xerox.com
*Counsel for Defendant*