# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

GIANINNA GALLARDO, AN
INCAPACITATED PERSON, BY
AND THROUGH HER PARENTS
AND CO-GUARDIANS, PILAR
VASSALLO AND WALTER
GALLARDO,

       *Plaintiff,*

v.                             **Case No. 4:16cv116-MW/CAS**

ELIZABETH DUDEK, IN HER
OFFICIAL CAPACITY AS SECRETARY
OF FLORIDA AGENCY FOR HEALTH
CARE ADMINISTRATION,

       *Defendant.*

_____/

## ORDER ON SUMMARY JUDGMENT MOTIONS

Imagine this scenario. You're the parent of a thirteen-year-old girl, whom you love dearly. She is your world. Tragically, one day you receive the phone call that every parent fears more than anything; the daughter that you adore was struck by a vehicle, medevacked to a nearby hospital, and is now in critical condition. Medicaid covers around $800,000 for her treatment. Although the hospital staff tries their best, they aren't miracle workers. As a result of the accident, your beloved daughter is now in a persistent

vegetative state and can no longer ambulate, communicate, eat, or care for herself in any manner. You try to wake up from this nightmare. But you're not asleep—the nightmare is real.

And it only gets worse. Knowing that your daughter will need continuous medical care for the rest of her life (and hoping to recover past expenses and emotional damages), you file suit against the responsible parties. Even though your suit is worth somewhere around $20,000,000, you eventually settle for $800,000; a 4% recovery. You then notify the applicable state agency, which will for purposes of this hypothetical be called "the agency" for short, of the settlement and explain that around $35,000 of that settlement is for past medical expenses—4% of the approximately $800,000. Nonetheless, as allowed by the state's statute, the agency imposes an approximately $300,000 lien—an amount representing, as prescribed by the state's statute, 37.5% of your settlement. Moreover, the agency seeks to satisfy that lien from the settlement funds representing both past *and* future medical expenses. And the only way you can successfully reduce that lien is to prove by clear and convincing evidence that the

actual amount allocable to past and future medical expenses is, in fact, less than that $300,000.

Gianinna Gallardo's parents are currently living that nightmare. After initiating administrative proceedings to challenge that lien, Gallardo's parents and guardians filed this case on her behalf seeking a declaratory judgment that Florida's reimbursement statute—which that hypothetical was based on—violates federal law. Particularly relevant to that issue is the federal Medicaid statute's anti-lien provision, which generally prohibits participating states from placing a lien on any portion of a Medicaid beneficiary's recovery not designated as payments for medical care.

Is Florida's reimbursement statute preempted by federal Medicaid law? The short answer is "yes." By allowing the State Agency for Health Care Administration ("AHCA")—Florida's agency that is charged with administering Medicaid—to satisfy its lien from settlement funds allocable to both past and future medical expenses, Florida has run afoul of the Medicaid statute. The same is true for Florida's arbitrary, one-size-fits-all statutory formula. Specifically, Florida's reimbursement statute—which, coupled with a host of other obstacles, only allows the Medicaid

recipient to rebut that formula-based allocation by presenting clear and convincing evidence that it is inaccurate—amounts to a quasi-irrebuttable presumption and thus conflicts with and is preempted by federal law.

Gallardo's Motion for Summary Judgment, ECF No. 11, is therefore **GRANTED**, and AHCA's Motion for Summary Judgment, ECF No. 13, is therefore **DENIED**.[1]

## I

This case involves a few relatively straightforward provisions of the otherwise dizzying Medicaid Act[2] and Florida's attempt to legislate against those provisions. To simplify this Court's analysis, it will outline the following in turn: (1) the relevant portions of the federal Medicaid statute; (2) Florida's reimbursement statute; and (3) the underlying facts of this case.

### A. Federal Law

Medicaid is a joint federal–state program designed to help participating states provide medical treatment for their residents

---

[1] This Court reaches these conclusions with the benefit of an April 11, 2017, hearing.

[2] The Supreme Court has previously stated that Medicaid's "Byzantine construction . . . makes [it] 'almost unintelligible to the uninitiated.'" *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981) (quoting *Friedman v. Berger*, 547 F.2d 724, 727 n.7 (2d Cir. 1976)).

that cannot afford to pay. *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011). Although states are not required to participate in Medicaid, all of them do. *Id.* The federal government pays a significant portion of the costs for patient care and, in return, the states pay the remainder and must comply with the federal statutory and regulatory requirements. *See Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985) (stating that the federal government "subsidizes a significant portion of the financial obligations the State has agreed to assume" and that "[o]nce a State voluntarily chooses to participate in Medicaid, the State must comply with the requirements of Title XIX and applicable regulations" (citing *Harris v. McRae*, 448 U.S. 297, 301 (1980))).

Two of those requirements are the so-called anti-lien and anti-recovery provisions. These requirements are broad and "express limits on the State's powers to pursue recovery of funds it paid on the recipient's behalf." *Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S 268, 283 (2006). Specifically, the anti-lien provision states that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, [with exceptions not relevant here]." 42 U.S.C. § 1396p(a)(1)

(2012). Similarly, the anti-recovery provision states that "[n]o adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, [with exceptions not relevant here]." *Id.* § 1396p(b). Thus, considered "literally and in isolation," the anti-lien and anti-recovery provisions prohibit states from reaching the proceeds from a Medicaid recipient's recovery. *Ahlborn*, 547 U.S. at 284.

But the third-party liability and assignment provisions temper that sweeping prohibition by providing narrow exceptions. The third-party liability provision, for example, requires states "to ascertain the legal liability of third parties . . . to pay for care and services under the plan[.]" § 1396a(a)(25)(A). If third-party liability is found to exist, states must seek reimbursement for medical expenses incurred on behalf of recipients who later recover from those third parties. *See id.* § 1396a(a)(25)(B) ("[I]n any case where such a legal liability is found to exist *after medical assistance* has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for *such assistance* to the extent of such legal liability[.]" (emphasis added)). Likewise, under the

assignment provision, states must have in effect laws that, "to the extent that payment has been made under the State plan for *medical assistance for health care items or services furnished* to an individual," give the state the right to recover payment "for such [furnished] health care items or services" from liable third parties. *Id.* § 1396a(a)(25)(H) (emphasis added). To help effectuate that requirement, states must require a recipient "to assign the State any rights . . . to *payment for medical care* from any third party." *Id.* § 1396k(a)(1)(A) (emphasis added).

To summarize, the third-party liability and assignment provisions outlined in §§ 1396(a)(25) and 1396k(a) are narrow exceptions to the broad anti-lien and anti-recovery provisions, and those exceptions only apply to payments for medical care. *See Ahlborn*, 547 U.S. at 284–85 ("As explained above, the exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care."). "Beyond that, the anti-lien provision" shields a recipient's recovery from the state's clutches. *Id.* at 285–86.

## B. State Law

Florida applies a one-size-fits-all statutory formula to determine how much of a recipient's recovery constitutes medical expenses and is therefore available for Medicaid reimbursement.

First, the formula reduces the gross recovery by 25% to account for the recipient's attorney's fees. *See* § 409.910(11)(f)(1), Fla. Stat. (2016) (deducting "attorney's fees and taxable costs" from the "judgment, award, or settlement"); *id.* § 409.910(11)(f)(3) (deciding for purposes of the statutory formula that attorney's fees "shall be calculated at 25 percent of the judgment, award, or settlement"). The already-reduced total is then cut in half, and AHCA is awarded the lesser of the amount it actually paid or the resulting number. *See id.* § 409.910(11)(f)(1) (awarding AHCA "one-half of the remaining recovery" after accounting for attorney's fees, "up to the total amount of medical assistance provided by Medicaid"). The remaining amount is paid to the Medicaid recipient. *Id.* §409.910(11)(f)(2).

The Medicaid recipient, however, may challenge that formula-based allocation through an administrative proceeding. To do so, the recipient must either pay AHCA the formula-based reimbursement or place those reimbursement funds in an interest-bearing trust account and then file a petition with the Division of Administrative Hearings in Tallahassee. *See id.* § 409.910(17)(b) (outlining the administrative procedure); *id.* § 409.910(17)(d) ("Venue for all administrative proceedings pursuant to this

subsection lies in Leon County, at the discretion of the agency."
(footnote omitted)). To successfully challenge the formula-based
allocation and thus reduce the amount payable to AHCA, "the
recipient must prove, by clear and convincing evidence, that a
lesser portion of the total recovery should be allocated as
reimbursement for past and future medical expenses than the
amount" required by the statutory formula. *Id.* § 409.910(17)(b).
That administrative process "is the exclusive method for
challenging" the formula-based allocation. *Id.*

## C. Present Litigation

On November 19, 2008, Gianinna Gallardo ("Gallardo"),
then a thirteen-year-old student, suffered severe and permanent
injuries as a result of being struck by a vehicle after she was
dropped off by her school bus. ECF No. 1, at 11. She is in a
persistent vegetative state and is no longer able to care for herself.
*Id.* Gallardo's medical expenses were paid by Medicaid and
WellCare of Florida, which paid $862,688.77 and $21,499.30,
respectively. *Id.* at 12.

Gallardo's parents filed suit in state court against those
allegedly responsible for her injuries—the truck's owner, the
truck's driver, and the Lee County School Board. ECF No. 10-1.

9

Gallardo sought past medical expenses, future medical expenses, lost earnings, and other damages, while her parents sought loss-of-consortium damages. *Id.* As required by Florida law, *see* § 409.910 (11)(a), AHCA was notified of that lawsuit and, in turn, it asserted a lien against that cause of action for the amount it expended for Gallardo's past medical expenses: $862,688.77. ECF No. 1, at 17. Gallardo's case eventually settled for $800,000, and the court approved that settlement. *Id.* at 13; *see also* ECF No. 10-2 (approving the settlements). Thus, pursuant to Florida's formula-based allocation, AHCA was due to be reimbursed $323,508.29 in medical expenses.

Shortly after the settlement was finalized, Gallardo's counsel notified AHCA of the settlement by letter. ECF No. 1, at 17–18. In that letter, counsel explained that Gallardo's damages were valued at over $20,000,000, and that the settlement amounted to a mere 4% recovery. *Id.* at 18. Thus, according to Gallardo, only $35,367.52 of her $800,000 settlement represented past medical expenses. *Id.* AHCA never responded to Gallardo's letter. *Id.*

Gallardo chose to contest AHCA's lien through the state administrative procedure outlined in § 409.910(17)(b). *Id.* She

therefore followed the necessary requirements; namely, depositing the formula-based reimbursement of $323,508.29 into an interest-bearing account and filing a petition with the Division of Administrative Hearings in Tallahassee. *Id.* In those proceedings, Gallardo has argued that contrary to federal law, AHCA is endeavoring to recover its past Medicaid payments from settlement funds that do not represent compensation for past medical expenses. *Id.* at 18–19. AHCA, however, has argued that it is entitled to satisfy its lien from the portion of Gallardo's settlement representing compensation for past *and future* medical expenses. *Id* at 19. AHCA has further argued that Gallardo may successfully challenge the formula-based allocation only if she can prove by clear and convincing evidence that the amount of her settlement representing past and future medical expenses is less than $323,508.29. *Id.*

Gallardo brought this case seeking an injunction and declaratory judgment that Florida's reimbursement statute violates federal law to the extent it (1) allows ACHA to satisfy its lien beyond the portion of her settlement representing compensation for past medical expenses and (2) only allows her to successfully challenge the formula-based allocation by presenting

clear and convincing evidence that that amount is more than the portion of her settlement that represents compensation for past medical expenses. ECF No. 11, at 2. After this case was filed, the parties moved the Administrative Law Judge to hold those proceedings in abeyance, and that motion was granted pending resolution of the instant case. ECF No. 10-3. In this case, the parties have filed cross motions for summary judgment. ECF Nos. 11–12 (Gallardo); ECF Nos. 13–14 (AHCA).

## II

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties agree to all material facts; thus, the only disputes relate to questions of law. "'Where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.'" *Bruley v. Village Green Mgmt. Co.*, 592 F. Supp. 2d 1381, 1388 (M.D. Fla. 2008) (quoting *Uhl v. Swanstrom*, 79 F.3d 751, 754 (8th Cir. 1996)).

## III

Gallardo contends that § 409.910 conflicts with federal law and is therefore preempted to the extent that it allows AHCA to

satisfy its lien from a Medicaid recipient's recovery for future medical expenses. This Court agrees.

When a statute's text is unambiguous, as is the case here, the court's analysis begins and ends with the text. *Reeves v. Astrue*, 526 F.3d 732, 734 (11th Cir. 2008) (citing *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222–25 (11th Cir. 2001)). That is because "'[i]f the statute speaks clearly to the precise question at issue, [courts] must give effect to the unambiguously expressed intent of Congress.'" *Jackson v. Comm'r of Soc. Sec.*, 601 F.3d 1268, 1271 (11th Cir. 2010) (quoting *Barnhart v. Walton*, 535 U.S. 212, 217–18 (2002)).

AHCA suggests that, given the Gordian knot that is the Medicaid Act, the issue before this Court is "not an easy" one to decide. ECF No. 14, at 3 & n.1. But as to the issue presented to this Court, the Medicaid Act could not be any clearer. By its plain language, it prohibits AHCA from satisfying its lien from anything but a Medicaid recipient's recovery for past medical expenses.

As a general matter, the anti-lien provision prohibits AHCA from imposing a lien against the property of a Medicaid recipient. § 1396p(a)(1). That includes liens against "medical assistance *paid* or *to be paid*." *Id* (emphasis added). And although the third-party

liability and assignment provisions are exceptions that grant AHCA a restricted right of recovery, they are exceedingly narrow ones. *See Ahlborn*, 547 U.S. at 284–85 (noting these are narrow "exception[s] to the anti-lien provision" (citing *Wash. State Dep't of Soc. and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 383–85 & n.7 (2003))).

A plain reading of the statutory text shows that AHCA's right of recovery is even narrower than it suggests; namely, it only applies to payments made for *past* medical expenses. To simplify this Court's analysis, the critical statutory language is italicized. The anti-lien provision prohibits ACHA from seeking reimbursement from a recipient's recovery for "medical assistance paid *or to be paid*." § 1396p(a) (emphasis added). But "to the extent *that payment has been made* under the State plan for medical assistance," AHCA may assert a lien or otherwise acquire a Medicaid recipient's rights "to payment by any other [third] party for *such [furnished] health care items or services*." § 1396a(a)(25)(H). That necessarily suggests that AHCA may only seek reimbursement from funds representing payments for medical expenses that it previously made on the beneficiary's behalf. *See McKinney ex rel. Gage v. Phila. Housing Auth.*, No. 07-

4432, 2010 WL 3364400, at *9 (E.D. Pa. Aug. 24, 2010) ("It is clear from a reading of the statutory language that the italicized word 'such' refers to the 'payment [that] has been made'—that is, the payments the state made on the beneficiary's behalf *in the past* for medical expenses." (emphasis in original)).

Other provisions bolster that conclusion. For example, §§ 1396a(a)(25)(A)–(B) direct AHCA to seek reimbursement only to the extent of the third party's liability "*to pay* for care and services available under the plan . . . ." *See Ahlborn*, 547 U.S. at 280 ("'[S]uch legal liability' refers to 'the legal liability of third parties . . . *to pay for care and services available under the plan.*'" (quoting § 1396a(a)(25)(A)) (emphasis in original)). Similarly, § 1396k(b) suggests that AHCA may only be reimbursed "for medical assistance *payments made* on behalf of an individual with respect to whom such assignment was executed . . . ." The Medicaid statute's text is unambiguous and must therefore be followed; AHCA cannot reimburse itself for its *past* medical expenses from portions of the recipient's recovery allocated to compensate for *future* medical expenses.[3]

---

[3] *See, e.g.*, *In re E.B.*, 729 S.E.2d 270, 299 n.35 (W. Va. 2012) (agreeing that "*Ahlborn* is more consistent with limiting a state's recovery to settlement

Although the Supreme Court has not addressed this precise issue, related cases suggest it would reach the same conclusion. Take *Ahlborn*, for example. There, the Court held that a state may satisfy its Medicaid lien only through the portion of a recovery allocated for medical expenses. *See Ahlborn*, 547 U.S. at 281 (limiting reimbursement to "medical expenses—not lost wages, not pain and suffering, not an inheritance"). In reaching that conclusion, it reasoned that "the federal third-party liability provisions *require* an assignment of no more than the right to recover that portion of a [recovery] that represents *payments for medical care*." *Id.* at 282 (emphasis added and in original). Likewise, the Supreme Court later emphasized that states may "seek reimbursement for *medical expenses paid* on the beneficiary's behalf, but the anti-lien provision protects the beneficiary's interest in the remainder of the settlement." *Wos v. E.M.A. ex rel. Johnson*, 133 S. Ct. 1391, 1397 (2013) (emphasis added) (citing *Ahlborn*, 547 U.S. at 284). The Supreme Court's

---

proceeds that are allocated to past medical expenses, rather than to proceeds allocated to both past and future medical expenses generally"); *McKinney*, 2010 WL 3364400, at *9 ("Therefore, it would appear that [the state agency] cannot draw on portions of the settlement designed to compensate for future medical expenses in order to reimburse itself for *past* medical expenditures." (emphasis in original)).

references to "past medical expenses" and "medical expenses paid" support the conclusion that state agencies may not seek reimbursement of their past Medicaid payments from portions of a recipient's recovery representing future medical expenses.

Of course, this Court acknowledges that other courts have disagreed. *See Special Needs Trust for K.C.S. v. Folkemer*, No. 8:10-cv-1077, 2011 WL 1231319, at *12 (D. Md. Mar. 28, 2011) ("The fact that the settlement in this case contained unstipulated amounts that might represent payments for future medical expenses, and the fact that the Department is seeking to recover from this unstipulated amount does not violate the anti-lien provision . . . ."); *IP ex rel. Cardenas v. Henneberry*, 795 F. Supp. 2d 1189, 1197 (D. Colo. 2011) (concluding that the state agency "may seek reimbursement for its past medical expenses from funds allocated to 'medical expenses,' regardless of whether those funds are allocated for past or future medical expenses"); *In re Matey*, 213 P.3d 389, 394 (Idaho 2009) ("Nothing in 42 U.S.C § 1396p indicates that the State may not seek recovery of its payments from a Medicaid recipient's total award of damages for medical care whether for past, present, or future care."). Those cases are non-binding. That aside, those cases are not persuasive because

the courts do not address the language referencing past medical expenses highlighted in *Ahlborn*, *Wos*, or §§ 1396a(a)(25)(A)–(B), 1396a(a)(25)(H), and 1396k.

AHCA cites to other provisions in § 1396k to argue that it may seek reimbursement for past medical expenses through portions of a recipient's recovery allocated to compensate for future medical expenses. ECF No. 14, at 16–18. Specifically, it references language in § 1396k(a)(1)(A) that requires the recipient "to assign the State any rights . . . to support . . . and to payment for medical care from any third party." According to AHCA, "payment for medical care" contemplates *all* medical care—including future medical care. ECF No. 14, at 17.

That argument is clever, yet ultimately unconvincing. "[C]ourts cannot use tunnel vision when construing statutes; rather, statutes must be considered as a whole." *Fla. Democratic Party v. Scott*, No. 4:16-cv-626, 2016 WL 6080990, at *2 (N.D. Fla. Oct. 10, 2016) (Walker, J.) (citing *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 94 (1993)). Moreover, "specific statutes prevail over general ones." *Id.* (citing *D. Ginsberg & Sons v. Popkin*, 285 U.S. 204, 208 (1932)). The Supreme Court thus construes the assignment provision in § 1396k(a) identically

as the one in § 1396a(a)(25); indeed, it has stated that § 1396a(a)(25)(H)—which limits recovery "to the extent that payment has been made . . . for medical assistance for health care items or services furnished to" a recipient—"echoes the requirement of mandatory assignment rights in § 1396k(a)[.]" *Ahlborn*, 547 U.S. at 281. Because § 1396k(a) is not interpreted as narrowly as AHCA suggests, its blinders-on approach is unavailing.

This Court concludes that federal law prohibits state agencies from seeking reimbursement of past Medicaid payments from portions of a recipient's recovery that represents future medical expenses. Florida's statute is therefore preempted if and to the extent that it operates that way. *See Irving v. Mazda Motor Corp.*, 136 F.3d 764, 768 (11th Cir. 1998) ("Conflict preemption exists where state law actually conflicts with federal law, making it impossible to comply with both, or where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" (quoting *Lewis v. Brunswick Corp.*, 107 F.3d 1494, 1500 (11th Cir. 1997))). And for that reason it is preempted. Florida law does not prohibit AHCA from asserting a lien on portions of a recipient's recovery representing

future medical expenses; in fact, it explicitly allows it to do just that. § 409.910(17)(b) (allowing AHCA to recover from the "portion of the total recovery . . . for past *and future* medical expenses" (emphasis added)). Accordingly, that portion of the statute is preempted.

## IV

Gallardo also asserts that § 409.910 and its one-size-fits-all statutory formula—which the Medicaid recipient may only rebut by presenting clear and convincing evidence to the contrary—violates due process and is preempted by federal law.

## A

At first glance, Gallardo's due-process argument is both circular and conclusory. According to her, the reimbursement statute violates due process because it takes the recipient's property without affording it adequate process. Reading between the blurred lines of her gaunt argument, however, this Court can conceive of two possible due-process challenges.

Gallardo could first argue, and it appears she does, that Florida's reimbursement statute effectively turns due process on its head. The argument goes as follows. Florida's statutory formula violates the Due Process Clause by allowing AHCA to take

Gallardo's property—namely, the settlement funds not allocated for past medical expenses—and only allowing her to recover those funds if she can affirmatively disprove the formula-based allocation with clear and convincing evidence. In support, Gallardo cites cases holding that "the State's power to regulate procedural burdens [is] subject to proscription under the Due Process Clause if it 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental[.]'" *Cooper v. Oklahoma*, 517 U.S. 348, 367 (1996) (citing *Patterson v. New York*, 432 U.S. 197, 201–02 (1977)); *see also Del Valle v. State*, 80 So.3d 999, 1013 (Fla. 2011) (holding that the necessity of certain criminal procedures "is rooted in the fundamental fairness notion required by due process"). But this case just doesn't involve such a rule. Those cases highlight rare circumstances where a person is deprived of something so fundamental that imposing a heightened burden to challenge that deprivation violates the Due Process Clause. And in fact, those cases make explicit that the mere deprivation of money is not one of those rare circumstances. *See Cooper*, 517 U.S. at 363 (distinguishing the "'mere loss of money'" from other civil proceedings where due process allows a heightened

burden of proof (citing *Santosky v. Kramer*, 455 U.S. 745, 756 (1982))). Those cases are therefore readily distinguishable.

Alternatively, Gallardo could have asserted that Florida's reimbursement statute violates the Due Process Clause because it does not provide notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) (stating that "the essence of due process is the requirement that" a person be provided notice and a "meaningful opportunity to present their case"). It is undisputed that Medicaid recipients are provided notice. Thus, the only issue is whether Florida's reimbursement statute grants recipients a meaningful opportunity to be heard. Gallardo could have argued that it doesn't; that is, by placing such an onerous burden on Medicaid recipients to regain their property, Florida has so drastically undermined § 409.910's post-deprivation remedy that it is essentially nonexistent and thus inadequate under federal law. *See Hamlin v. Vaudenberg*, 95 F.3d 580, 585 (7th Cir. 1996) (holding that a "meaningless or nonexistent" post-deprivation remedy is inadequate). But that argument was not made, and this Court will not go out of its way to decide an issue that is not before it. This is particularly true where, as here, this Court explicitly asked Gallardo's counsel to define the contours of

her due process claim at the hearing and whether he was making this specific argument, and counsel redirected this Court to *Cooper* and its progeny.

B

Secondly, and more broadly, Gallardo argues that Florida's entire reimbursement statute conflicts with and is preempted by federal law. To the extent that Medicaid recipients must affirmatively disprove the arbitrary formula-based allocation with clear and convincing evidence to successfully overcome it, this Court agrees.

One particular issue relevant to this case remained undecided after *Ahlborn*. Because states may not seek reimbursement from "any part of a Medicaid beneficiary's tort recovery 'not designated as payments for medical care,'" how can states "determine what portion of a settlement represents payment for medical care[?]" *Wos*, 133 S. Ct. at 1397–98 (quoting *Ahlborn*, 547 U.S. at 284). In *Wos*, the Supreme Court considered a North Carolina statute that "establishe[d] a conclusive presumption that one-third of the [Medicaid recipient's] recovery represents compensation for medical expenses." *Id.* at 1398. The Court recognized that while some "rebuttable presumptions and

adjusted burdens of proof" may comply with the Medicaid statute, "[a]n irrebuttable, one-size-fits-all statutory presumption" that a pre-determined percentage of the recipient's recovery constitutes "payment for medical care" does not. *Id.* at 1398–99, 1401 (citations omitted). That is particularly so if the state has not provided evidence that such an allocation was "reasonable in the mine run of cases" and has no process "for determining whether [such an allocation] is a reasonable approximation in any particular case." *Id.* at 1398–99. Because North Carolina's irrebuttable, one-size-fits-all statutory presumption allowed "the State to take a portion of a Medicaid beneficiary's tort judgment or settlement not 'designated as payments for medical care[,]'" *id.* at 1402 (quoting *Ahlborn*, 547 U.S. at 284), it was preempted by federal law.

Florida's statute suffers from that same defect, yet for more nuanced reasons. And this Court is not reaching that conclusion just because Florida's reimbursement statute doesn't pass the "smell test." Rather, the Supreme Court has provided an effective framework to analyze this kind of scenario—a rebuttable presumption that is nearly impossible to rebut. Specifically, *Wos* teaches that states cannot accomplish through creative legislative

draftsmanship that which is prohibited under federal law. *See Wos*, 133 S. Ct. at 1398 ("A State may not evade the pre-emptive force of federal law by resorting to creative statutory interpretation or description at odds with the statute's intended operation and effect." (citing *Nat'l Meat Assn. v. Harris*, 565 U.S. 452 (2012))). That is because "[i]n a pre-emption case . . . a proper analysis requires consideration of what the state law in fact does, not how the litigant might choose to describe it." *Id*. In other words, preemption "is not a matter of semantics." *Id*.

But that is precisely what Florida has tried to do here; namely, evade federal law by enacting a "rebuttable" one-size-fits-all statutory formula that almost by definition allows AHCA to obtain more than that which it is entitled to. And by setting a baseline wholly detached from any rational standard—for instance, the federal Medicaid statute, Supreme Court case law, or AHCA's past medical expenditures in that specific case—it does so in a wildly arbitrary fashion.

Like in *Wos*, nothing in the record helps explain why Florida chose the precise formula that it did. It is therefore impossible to judge whether it is "likely to yield reasonable results in the mine run of cases." *Id*. at 1402. If this case is any example, it is not likely

to do so. When the Florida legislature amended the reimbursement statute, it had the benefit of *Wos* and knew what changes were required to comply with federal law. *See* ECF No. 10-5, at 5. But rather than trying to adequately address *Wos* through thoughtful amendments, the Florida legislature simply slapped a band-aid on the reimbursement statute by calling the formula-based allocation rebuttable and requiring the recipient to meet a heightened burden to successfully challenge it. That superficial response is simply not enough.

Similarly, although not before this Court, Florida's reimbursement statute ignores that "[w]hen there has been a judicial finding or approval of an allocation between medical and nonmedical damages—in the form of either a jury verdict, court decree, or stipulation binding on all parties—that is the end of the matter." *Wos*, 133 S. Ct. at 1399. In Florida, not even a jury's allocation is immune from the reimbursement statute. *See* § 409.910(11)(f) (applying Florida's statutory formula to any case "in which the recipient or his or her legal representative is a party which results in a judgment, award, or settlement from a third

party"). That is further evidence that Florida did not adequately tailor its reimbursement statute to federal law.

Moreover, Florida's arbitrary statutory formula—which plucks a 25% figure for attorney's fees out of mid-air—allows AHCA to take even more money than it is entitled to. The Rules Regulating the Florida Bar allow attorneys to set their fee on a sliding scale up to 40% of the plaintiff's recovery.[4] *See* R. Regulating Fla. Bar 4–1.5(f)(4)(B)(i) (2017) (allowing an attorney to charge a contingent fee up to 33.3% of any recovery up to $1 million before the filing of an answer and up to 40% after the filing of an answer). Florida's statutory formula, however, only reserves 25% of the judgment for attorney's fees. That necessarily strips even more money from the recipient.

An example is helpful. Imagine that AHCA asserts a $300,000 lien against a recipient's cause of action as

---

[4] That figure is conditioned on whether an answer has been filed or whether a demand for appointment of arbitrators has been made. Before either of those conditions occurs, Plaintiff's attorneys may charge "33 1/3% of any recovery up to $1 million," plus "30% of any portion of the recovery between $1 million and $2 million," plus "20% of any portion of the recovery exceeding $2 million." R. Regulating Fla. Bar 4–1.5(f)(4)(B)(i)(a) (2017). After one of those conditions occur, Plaintiff's attorneys may charge "40% of any recovery up to $1 million," plus "30% of any portion of the recovery between $1 million and $2 million," plus "20% of any portion of the recovery exceeding $2 million." *Id.* 4–1.5(f)(4)(B)(i)(b).

reimbursement for expenditures it made on the recipient's behalf. Because of liability issues, the recipient settles the case for $100,000—$10,000 of which represents past medical expenses. Since the recovery is less than AHCA's lien, the formula-based allocation applies. Given the Florida Bar's rules for attorney's fees, the recipient's attorney in either scenario could receive up to $40,000, and let's say he does. Assuming a hypothetical formula tied to the Florida Bar's attorney's fees rules—meaning that 40% of the recipient's recovery is reserved for attorney's fees—and further assuming that the recipient is not able to rebut the formula-based allocation, AHCA and the recipient would both receive $30,000. Yet under Florida's actual statutory formula, AHCA would receive $37,500, which would leave only $22,500 for the recipient—$7,500 less than the recipient would have received under the hypothetical formula.

| | Hypothetical Formula-Based Allocation tied to the Florida Bar's Attorney's Fees Rules | § 409.910(17)'s Formula-Based Allocation |
|---|---|---|
| Attorney's Fees | $40,000 | $40,000 |
| AHCA's Reimbursement | $30,000 | $37,500 |
| Recipient Recovery | $30,000 | $22,500 |

Consequently, Florida's statutory formula allows AHCA to pocket

even more money it would have been entitled to under a formula tailored to the Florida Bar's attorney's fees rules.

That result is not an accident. Florida did not hide the ball here; rather, it made explicit its intent to tilt the scales in AHCA's favor. *See* ECF No. 10-4, at 4 (opining that § 409.910's current iteration "increase[es] the likelihood the State will prevail in defending Medicaid liens," "result[s] in an increase in [third-party liability] collections[,]" and "reduc[es] the expense and staff time" required to defend Medicaid liens). That is consistent with the Florida legislature's intent "that Medicaid be the payor of last resort for medically necessary goods and services furnished to Medicaid recipients." § 409.910(1).

The arbitrary nature of Florida's reimbursement statute alone is likely enough to rule that it is preempted. *See Wos*, 133 S. Ct. at 1398 ("If a State arbitrarily may designate one-third of any recovery as payment for medical expenses, there is no logical reason why it could not designate half, three-quarters, or all of a tort recovery in the same way."). Yet it gets worse. On top of that arbitrary baseline, Florida has shifted the burden to the Medicaid recipient to prove that she is entitled to that which is already hers. And that burden is a particularly onerous one. *Cf. Mfg. Research*

*Corp. v. Graybar Elec. Co., Inc.*, 679 F.2d 1355, 1360 (11th Cir. 1982) (suggesting that a clear and convincing burden "is an onerous one"); *Gordon v. Dennis Burlin Sales, Inc.*, 174 B.R. 257, 259 (Bankr. N.D. Ohio 1994) (stating that "a clear and convincing evidence standard . . . is a more onerous burden of proof" (citing *In re Smith*, 170 B.R. 111 (Bankr. N.D. Ohio 1994))).

What makes Florida's reimbursement statute and AHCA's application of that statute even more pernicious is that AHCA has both the authority and the capability to seek its reimbursement directly from the responsible third party (or, as here, parties). *See* § 409.910(11) ("The agency may, as a matter of right, in order to enforce its rights under this section, institute, intervene in, or join any legal or administrative proceeding in its own name in one or more of [a variety of] capacities[.]"). Yet in this case and many others, it simply chooses not to. And the effect of that choice should not be overlooked. Rather than paying its own attorneys to recover these funds, AHCA shifts a disproportionate share of the costs to the recipient—costs which come directly out of the recipient's

recovery. Then AHCA seeks its reimbursement directly from the recipient's already-reduced recovery.

At a certain point, requiring a Medicaid recipient to overcome a hodgepodge of hurdles amounts to a quasi-irrebuttable presumption. That is the case here; although Florida's reimbursement statute—which requires Medicaid recipients to overcome obstacle after obstacle just to keep a portion of the judgment that the recipient is already entitled to—may be "rebuttable," in practice, it is a quasi-irrebuttable one.[5] Yet that flouts federal law. Because Florida cannot save its reimbursement statute through wily draftsmanship, *see Wos*, 133 S. Ct. at 1398 ("A state may not evade the pre-emptive force of federal law by resorting to creative statutory interpretation or description at odds with the statute's intended operation and effect."), it is therefore preempted.

In so ruling, this Court wants to make itself absolutely clear. This Court is not saying that Florida may not enact a rebuttable, formula-based allocation to determine what portion of a judgment

---

[5] AHCA's reference to other administrative proceedings where Medicaid recipients successfully rebutted the formula-based allocation does not undermine this conclusion. It is of no matter how certain Administrative Law Judges apply Florida's reimbursement statute; their application of that statute isn't before this Court. The statute itself is.

represents past medical expenses; in fact, the Supreme Court has suggested, without holding, just the opposite. *See id.* at 1402 (mentioning that states "may even be able to adopt *ex ante* administrative criteria for allocating medical and nonmedical expenses"); *see also Ahlborn*, 547 U.S. at 288 n.18 (suggesting that states can enact "special rules and procedures for allocating tort settlements"). Nor is it saying that Florida may not shift the burden to Medicaid recipients to disprove that allocation; that issue is not before this Court, but it probably can. *See Wos*, 133 S. Ct. at 1401 (implying that certain "rebuttable presumptions and adjusted burdens of proof" may be "compliant with the federal statute").

And although this Court doesn't get to rewrite Florida's statute—and it doesn't endeavor to do so—it can say when a Florida statute runs afoul of federal law. *See Fresenius Med. Care Holdings, Inc. v. Francois*, 832 F. Supp. 2d 1364, 1367 (N.D. Fla. 2011) (Mickle, J.) ("Other times, preemption is implied, such as when . . . the state and federal law are in such conflict that their objectives are at odds or when it would be impossible to comply with both (known as conflict preemption)." (citing *Fla. State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1167 (11th

Cir. 2008))). It does here. The reimbursement statute's clear and convincing burden—when coupled with a formula-based baseline wholly divorced from reality and a requirement that the recipient affirmatively disprove that baseline to successfully rebut it—is in direct conflict with the Medicaid statute's anti-lien and anti-recovery provisions. Thus, in this specific scenario, Florida's clear and convincing burden is preempted by federal law.

Accordingly,

**IT IS ORDERED:**

1.  Gallardo's Motion for Summary Judgment, ECF No. 11, is **GRANTED**.

2. AHCA's Motion for Summary Judgment, ECF No. 13, is **DENIED**.

3. In its current form, § 409.910, Fla. Stat. (2016), is preempted by federal law; namely, 42 U.S.C. § 1396a, 42 U.S.C. § 1396k, and 42 U.S.C. § 1396p.

4. The Clerk shall enter judgment stating:

   Gianinna Gallardo, an incapacitated person, by and through her parents and co-guardians, Pilar Vassallo and Walter Gallardo, successfully proved that portions of § 409.910(17)(b), Fla. Stat. (2016) are preempted by federal law. The State of Florida Agency for Health Care Administration is therefore enjoined from enforcing that statute in its current form.

It is declared that the federal Medicaid Act prohibits the State of Florida Agency for Health Care Administration from seeking reimbursement of past Medicaid payments from portions of a recipient's recovery that represents future medical expenses.

It is also declared that the federal Medicaid Act prohibits the State of Florida Agency for Health Care Administration from requiring a Medicaid recipient to affirmatively disprove Florida Statutes § 409.190(17)(b)'s formula-based allocation with clear and convincing evidence to successfully challenge it where, as here, that allocation is arbitrary and there is no evidence that it is likely to yield reasonable results in the mine run of cases.

5. The Clerk shall close the file.


**SO ORDERED on April 18, 2017.**


                              **s/ MARK E. WALKER**
                              **United States District Judge**