# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

GIANINNA GALLARDO, AN
INCAPACITATED PERSON, BY
AND THROUGH HER PARENTS
AND CO-GUARDIANS, PILAR
VASSALLO AND WALTER
GALLARDO,

        *Plaintiff,*

v.                          **Case No. 4:16cv116-MW/CAS**

JUSTIN M. SENIOR, IN HIS
OFFICIAL CAPACITY AS SECRETARY
OF FLORIDA AGENCY FOR HEALTH
CARE ADMINISTRATION,

        *Defendant.*

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO ALTER OR AMEND JUDGMENT

In a cult-classic film, an eccentric inventor transforms a DeLorean sports car into a sleek time machine. *Cf. Back to the Future* (Universal Pictures 1985). Enthralled, the protagonist travels back in time, where (Great Scott!) he soon realizes that his actions in the past can nonetheless affect the future.

The Florida Agency for Health Care Administration

("AHCA")[1] has also tried to go back in time but, unlike the protagonist mentioned above, it *hopes to change* the future (more specifically, this Court's prior judgment). AHCA's vehicle of choice, though, isn't a time-traveling DeLorean; it is a Motion to Alter or Amend the Judgment. In that motion, AHCA makes a number of arguments—most of which were previously available to it. But this is not a movie; AHCA has not pointed to a sufficient reason for this Court to go back in time to allow it to raise those arguments in the first instance. AHCA also presents a separate standing argument, which is properly before this Court. But because AHCA is the agency that administers Medicaid and the only additional steps necessary to redress Gallardo's injuries are purely mechanical, its standing argument is unconvincing on the merits.

AHCA's motion is therefore **GRANTED** in part and **DENIED** in part.[2]

I

The facts were addressed at length in this Court's original

---

[1] For simplicity sake, this Court will refer to AHCA rather than Justin M. Senior (or Elizabeth Dudek, the original Defendant who has since stepped down from her position), who has been sued in his official capacity as Secretary of AHCA.

[2] This Court reaches this conclusion with the benefit of a June 15, 2017, hearing.

order granting summary judgment. *Gallardo v. Dudek*, No. 4:16-cv-116, 2017 WL 1405166 (N.D. Fla. Apr. 18, 2017). They are summarized briefly below and supplemented with the more recent events in this case.

Medicaid is a joint federal–state program whereby the federal government pays a significant portion of a recipient's medical costs and, in return, participating states must comply with the applicable federal statutes and regulations. *Id.* at *2. One of those provisions—the so-called anti-lien provision—states that "[n]o lien may be imposed against the property of any individual prior to his death on account of medical assistance paid or to be paid on his behalf under the State plan, [with exceptions not relevant here]." 42 U.S.C. § 1396p(a)(1) (2012). But two other provisions—the third-party liability and assignment provisions—are narrow exceptions that allow the state to assert liens on payments for medical care. *See Ark. Dep't of Health & Human Servs. v. Ahlborn*, 547 U.S. 268, 285 (2006) ("[T]he exception carved out by §§ 1396a(a)(25) and 1396k(a) is limited to payments for medical care. Beyond that, the anti-lien provision applies.").

Florida, which participates in the Medicaid program, applies a one-size fits all statutory formula to determine how much of a

recipient's recovery constitutes medical expenses and is therefore available for Medicaid reimbursement. *See* 409.910(11)(f), Fla. Stat. (2016). The ultimate result is that AHCA is awarded the lesser of (1) the amount it actually paid on the Medicaid recipient's behalf, or (2) 37.5% of the Medicaid recipient's total recovery. *Gallardo*, 2017 WL 1405166, at *3. The Medicaid recipient, however, may challenge that formula-based allocation and thus reduce the amount payable to AHCA by filing a petition with the Division of Administrative Hearings ("DOAH") and "'prov[ing], by clear and convincing evidence, that a lesser portion of the total recovery should be allocated as reimbursement for past and future medical expenses than the amount' required by the statutory formula." *Id.* (quoting § 409.910(17)(b), Fla. Stat. (2016)).

Gallardo is currently in the midst of that administrative process. She was struck by a vehicle and suffered severe and permanent injuries. Gallardo's medical expenses were covered by Medicaid and WellCare of Florida, which paid $862,688.77 and $21,499.30, respectively. *Id.* Gallardo's parents filed suit against those allegedly responsible for her injuries, and AHCA asserted a lien against that cause of action for the $862,688.77 it expended on her behalf. *Id.* Gallardo's case settled for $800,000. *Id.* Under

4

Florida's formula-based allocation, AHCA was therefore due to be reimbursed $323,508.29 in medical expenses. *Id.*

Rather than pay that lien in its entirety, Gallardo contested it through the state administrative procedure outlined in § 409.910(17)(b). *Id.* at *4. In those proceedings, Gallardo has argued that, contrary to federal law, AHCA is attempting to recover its past Medicaid payments from settlement funds that do not represent compensation for past medical expenses. *Id.* AHCA, however, has argued that it may satisfy its lien from the portion of Gallardo's settlement representing compensation for past and *future* medical expenses. *Id.* It has further argued that Gallardo may successfully challenge that formula-based allocation only if she can prove by clear and convincing evidence that the amount of her settlement representing past and future medical expenses is less than $323,508.29. *Id.*

Gallardo then sought declaratory and injunctive relief from this Court, ECF No. 1, and summary judgment was granted in its favor. More specifically, this Court declared that the federal Medicaid Act preempted certain portions of § 409.910(17)(b) and that AHCA therefore could not (1) "seek[] reimbursement of past Medicaid payments from portions of a recipient's recovery that

5

represents future medical expenses" or (2) "requir[e] a Medicaid recipient to affirmatively disprove . . . § 409.910(17)(b)'s formula-based allocation with clear and convincing evidence to successfully challenge it where, as here, that allocation is arbitrary and there is no evidence that it is likely to yield reasonable results in the mine run of cases." *Gallardo*, 2017 WL 1405166, at *11. AHCA was therefore enjoined from enforcing § 409.910(17)(b) in its current form. *Id.*

Apparently frustrated with this Court's ruling, AHCA hired new counsel, *see* ECF Nos. 42–43 (filing notices of appearance) and moved to vacate or amend the prior judgment, *see* ECF No. 44 (filing motion to alter judgment). According to AHCA, this Court erred in refusing to consider the reimbursement statute's practical effect and improperly shifted the burden to AHCA, thus requiring it—the non-moving party—to present evidence establishing that the reimbursement statute is not in conflict with (and therefore preempted by) federal law. *Id.* at 2–3. AHCA also asserts that this Court's prior judgment should be vacated because amendments to the federal Medicaid Act—which will apparently allow states "to obtain reimbursement from all or any part of a" Medicaid recipient's recovery—are scheduled to take effect on October 1,

6

2017. *Id.* at 17. Finally, AHCA submits that it does not enforce certain preempted portions of the reimbursement statute; thus, the judgment must be vacated or amended. *Id.* at 3.

## II

Rules 59 and 60 of the Federal Rules of Civil Procedure are tools of limited utility. They are not intended to provide disgruntled litigants with a second bite at the apple. *See O'Neal v. Kennamer*, 958 F.2d 1044, 1047 (11th Cir. 1992) (explaining that attempts under Rule 59 "to obtain a second bite at the apple" are generally inappropriate); *Seamon v. Vaughan*, 921 F.2d 1217, 1220 n.6 (11th Cir. 1991) (asserting that "raising . . . new arguments on a motion to amend . . . affords a litigant two bites at the apple" (citation omitted)). That is because the extraordinary remedy of reconsideration is only appropriate in rare circumstances. *See Pensacola Firefighters' Relief Pension Fund Bd. of Trs. v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 591 (N.D. Fla. 2010) ("Reconsideration of a court's previous order is an extraordinary remedy and, thus, is a power which should be used sparingly." (citations omitted)).

AHCA moves for reconsideration on three separate grounds, one of which is Rule 59(e). Reconsideration under Rule 59(e) is

available in the limited scenarios "where there is newly-discovered evidence, an intervening change in the law, or manifest errors of law or fact." *Fisher v. Carnival Corp.*, No. 11-22316-CIV, 2013 WL 12061861, at *1 (S.D. Fla. July 29, 2013) (citing *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007))). It is thus improper to use that vehicle "to relitigate old matters, raise forgotten arguments, or present evidence that could have been, but was not, raised prior to the entry of judgment." *Id.* (citing *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)). Relief under Rule 59(e) is particularly inappropriate when the moving "party has failed to articulate any reason for the failure to raise an issue at an earlier stage in the litigation." *Lussier v. Dugger*, 904 F.2d 661, 667 (11th Cir. 1990) (citing *Van Ryn v. Korean Air Lines*, 640 F. Supp. 284, 286 (C.D. Ca. 1985)).

AHCA also moves for reconsideration under Rule 60(b)(4) and (5). Rule 60(b)(4) offers relief only when the judgment was void—that is, rendered without jurisdiction or "in a manner inconsistent with due process of law." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (quoting *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992)). Relief is warranted under Rule 60(b)(5) only if the moving party can establish "a significant change either in

factual conditions or in law." *Fla. Wildlife Fed'n Inc. v. Admin, U.S. Envtl. Protective Agency*, 620 F. App'x 705, 707 (11th Cir. 2015) (quoting *Sierra Club v. Meiburg*, 296 F.3d 1021 (11th Cir. 2002)). Such relief is rarely granted. *See Enax v. Goldsmith*, 322 F. App'x 833, 835 (11th Cir. 2009) ("Relief under Rule 60(b) is an 'extraordinary remedy which may be invoked upon only a showing of exceptional circumstances.'" (quoting *Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001))); *see also United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (expressing that Rule 60(b)(4) applies in "rare" circumstances).

III

AHCA raises three arguments on the merits in support of its motion: (1) the formula-based allocation is not quasi-irrebuttable; (2) this Court ignored the presumption against preemption and improperly shifted the burden to AHCA; and (3) that a possible future amendment to federal law will require vacatur of the injunction at some later date. ECF No. 44, at 4–23.

Those should-have, could-have, and (to round out the trilogy) would-have arguments are too little, too late. Quite simply, a motion to alter or amend a judgment is not like a time-traveling DeLorean; namely, it does not allow an unhappy litigant to

repackage and relitigate previously decided issues or make new arguments that it wished it made in the first place. Yet that is precisely what AHCA seeks to do here. Unfortunately for AHCA, "I want a re-do" is not a valid reason to grant its motion. Nor has it "articulate[d] any reason" for this Court to allow it to make those arguments here. *Lussier*, 904 F.2d at 667. AHCA made a free, counseled, deliberate choice in deciding what arguments to make in its original motion and how to make them. It is irrelevant that the results of that motion are not to AHCA's liking. AHCA made its bed the first time around. Now it must lie in it.

AHCA's motion is especially pernicious in that this litigation strategy—retaining new counsel to file some species of reconsideration motion after receiving an unfavorable ruling—is all too common for Florida and its agencies. Despite numerous opportunities to adequately defend cases brought against it, Florida consistently drags its feet. Then, after receiving an unfavorable ruling, it complains about the original ruling and hires outside counsel (and spends, quite literally, hundreds of millions of taxpayer dollars)[3] to essentially relitigate the case.

---

[3] Since 2011, Florida has shelled out an astounding $237 million—or close to $40 million a year—on outside counsel. Gary Fineout, *State Spends*

Putting that aside, AHCA's arguments are unavailing. First, it is, in AHCA's words, "simply wrong" that this Court committed manifest error in concluding that the reimbursement statute's formula-based allocation amounts to a quasi-irrebuttable presumption based on the fact that, as AHCA points out, a handful of Medicaid recipients have rebutted the reimbursement statute's formula-based allocation. ECF No. 44, at 4, 6. AHCA plainly conceded that it was "not relying upon the practice" of "how individual [DOAH hearing officer]s may or may not apply the" formula-based allocation. ECF No. 44-1, at 13, 15. It cannot now reasonably expect this Court to ignore that concession.

Yet the result would be the same even if it did. That is because the formula-based allocation is still preempted if, "[i]n some circumstances, . . . [it] permit[s] the State to take a portion

---

*$237 million on private lawyers, records show*, Orlando Sentinel (Mar. 13, 2017), http://www.orlandosentinel.com/news/politics/political-pulse/os-florida-legal-fees-20170313-story.html. For context, New York—which has a *larger* population than Florida—spent less than half that amount. *Id.* And many of those dollars aren't even being funneled back into the state; instead, Florida often sends its taxpayer dollars to other states or jurisdictions. In one case alone, Florida racked up $97.8 million in attorneys' fees. Mary Ellen Klas, *Secretary resigned after $98 million in legal fees in Florida water wars*, Tampa Bay Times (Jan. 23, 2017), http://www.tampabay.com/news/secretary-resigned-after-98-million-in-legal-fees-in-florida-water-wars/2310572. Of that $97.8 million, Latham & Watkins LLP (which does not have a Florida office) was paid $35.9 million. *Id.* The two firms involved in that case with Florida offices—Foley & Lardner LLP and Carlton Fields Jorden Burt, P.A.—were paid a mere $2.6 million and $966,000, respectively. *Id.*

of a Medicaid beneficiary's tort judgment or settlement not 'designated as payments for medical care.'" *Wos v. E.M.A. ex rel. Johnson*, 568 U.S. 627, 644 (2013) (quoting *Ahlborn*, 547 U.S. at 284). And, after reasoning that the formula-based allocation ignores allocations made by a judge or jury and has no rational relationship to the Florida Bar's attorneys' fees rules,[4] *Gallardo*, 2017 WL 1405166, at *9, this Court concluded that it does.

Second, AHCA argues that this Court ignored the presumption against preemption and improperly shifted "the burden to AHCA to show whether the default allocation will yield reasonable results in the mine run of cases . . . ." ECF No. 44, at 13–14. Nonsense. Contrary to AHCA's assertion, the presumption

---

[4] AHCA denounces this Court for considering these factors. ECF No. 44, at 10–12. That denunciation is misplaced. The former was relevant to this Court's analysis in that *Wos* considered whether the statute at issue "operate[d] to allow the State to take one-third of the total recovery, even if a proper stipulation or judgment attributes a smaller percentage to medical expenses." 568 U.S. at 638. AHCA admitted that the formula-based allocation at issue here does just that. *See* ECF No. 44-1, at 11 (acknowledging that nothing "in the Florida statute . . . says the jury verdict will control the agency's lien amount"). Similarly, it was appropriate for this Court to consider the attorneys' fees provision. "[A] preemption analysis must contemplate the practical result of the state law . . . ." *United States v. Alabama*, 691 F.3d 1269, 1296 (11th Cir. 2012); *see also Blue Cross and Blue Shield of Fla., Inc. v. Dep't of Banking and Fin.*, 613 F. Supp. 188, 191 (M.D. Fla. 1985) (explaining that a preemption analysis requires courts "to consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written" (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 526 (1977))). Considering the attorneys' fees provision here simply revealed that, as applied, the formula-based allocation allows AHCA to take more than that which it is entitled to.

against preemption is an interpretative presumption—not an evidentiary one. *See Fla. State Conference of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1167–68 (11th Cir. 2008) (explaining that the presumption against preemption applies to "statutory interpretation" and, further, that "it is difficult to understand what a presumption in conflict preemption cases amounts to"); *see also CSX Transp., Inc. v. Healey*, Nos. 16-2171, 16-2172, 2017 WL 2703431, at *8 (1st Cir. June 23, 2017) (stating that the presumption against preemption is an "interpretative presumption[]" (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996))). That presumption "dissipates when the intention of Congress is 'clear and manifest.'" *Smith v. CSX Transp., Inc.*, 381 F. App'x 885, 886 (11th Cir. 2010) (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 334 (2008)). And that is precisely the case here; this Court thoroughly analyzed the anti-lien and anti-recovery provisions and concluded that they preempted portions of Florida's Medicaid statute. Such an analysis was eminently appropriate. *See Medtronic, Inc.*, 518 U.S. at 486 ("Congress' intent, of course, is primarily discerned from the language of the pre-emption statute and the 'statutory framework' surrounding it." (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 111 (1992)

(Kennedy, J., concurring in part and concurring in judgment))).

Moreover, this Court did not improperly shift the burden to AHCA on summary judgment. *See* ECF No. 44, at 15 (arguing that this Court "deviated from the accepted standard on summary judgment"). Rather, it simply adhered to *Wos*'s teaching that Florida could "adopt *ex ante* administrative criteria for allocating medical and nonmedical expenses, *provided that th[o]se criteria are backed by evidence* suggesting that they are likely to yield reasonable results in the mine run of cases." 568 U.S. at 643 (emphasis added). Because AHCA presented zero evidence suggesting that Florida's reimbursement statute follows (let alone considered[5]) that teaching, this Court correctly concluded that portions of it were preempted.

Third, it is immaterial that a potential amendment to the federal Medicaid Act may (or may not) allow states to "obtain reimbursement from all or any part of a" Medicaid recipient's recovery at some later time. ECF No. 44, at 17. That amendment's

---

[5] Although certainly not dispositive, Gallardo's counsel filed a Public Records Request seeking records containing "[a]ny analysis by AHCA that the [formula-based allocation] is a reasonable approximation of the amount recovered for past medical expenses incurred by AHCA . . . ." ECF No. 51-1, at 1. In response, AHCA stated that it possessed "no responsive documents." ECF No. 51-2, at 1.

effective date has been, at best, mercurial.[6] And even assuming the amendment *does* go into effect as planned and *actually* grants the states a more expansive right of recovery, other critical questions would remain unanswered—most relevant here, whether the amendment applies retroactively or prospectively. In any event, AHCA can seek relief under Rule 60(b)(5) if and when the Medicaid amendment goes into effect.

## IV

Finally, AHCA contends that this Court's prior judgment must be vacated (or at least amended) for lack of subject matter jurisdiction. More specifically, AHCA argues that Gallardo did not have standing to sue it because it does not enforce the challenged portions of Florida's reimbursement statute. Unlike AHCA's other arguments, its jurisdictional one is properly raised at this juncture. *See Fla. Ass'n of Med. Equip. Dealers v. Apfel*, 194 F.3d 1227, 1230 (11th Cir. 1999) ("[E]very court has an independent duty to review standing as a basis for jurisdiction at any time, for

---

[6] *See* Bipartisan Budget Act of 2013, Pub. L. 113-67, § 202(c), 127 Stat. 1165, 1177 (2013) (setting effective date of October 1, 2014); Protecting Access to Medicare Act of 2014, Pub. L. 113-93, § 211, 128 Stat. 1040, 1047 (2014) (moving effective date October 1, 2016); Medicare Access and Chip Reauthorization Act of 2015), Pub. L. 114-10, § 220, 129 Stat. 87, 154 (2015) (moving effective date to October 1, 2017).

every case it adjudicates." (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 230–31 (1990))); *see also* Fed. R. Civ. P. 12(h)(3) (allowing subject-matter jurisdiction arguments "at any time").

## A

Federal courts are not courts of general jurisdiction; instead, they are limited to hearing actual cases and controversies. U.S. Const. art. III, § 2. Necessarily baked into this "bedrock requirement," *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Valley Force Christian College v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982)), is that a plaintiff have standing, *see Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006) (noting that standing is a "threshold matter required for a claim to be considered by the federal courts"). For a plaintiff to have standing, he or she must establish, among other things,[7] that his or her injury is likely to be "redressed by a favorable decision." *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1241 (11th Cir. 2003) (quoting *Lujan v.*

---

[7] A plaintiff must also establish "that he [or she] has suffered an injury-in-fact—that is, an injury that is concrete and particularized, and actual or imminent" and "a causal connection between the injury and the defendant's conduct[.]" *Navellier v. Florida*, 672 F. App'x 925, 928 (11th Cir. 2016) (citing *DiMaio v. Democratic Nat'l Comm.*, 520 F.3d 1299, 1302 (11th Cir. 2008)). Those requirements, however, are not at issue here.

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). This is commonly referred to as the "redressability" prong.[8] *I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014).

Reduced to its most basic form, the redressability prong ensures that the court's judgment has teeth and can effectively rectify a cognizable injury. "Relief that does not remedy the injury suffered" is no relief at all and certainly "cannot bootstrap a plaintiff into federal court . . . ." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998). Thus, in suits such as this one, where "the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have *some connection* with

---

[8] One minor point of clarification. At the June 15, 2017, hearing, this Court did *not* ask "the parties to consider whether a less rigorous standard of redressability applies to claims for declaratory relief than to claims for injunctive relief." ECF No. 54, at 2. Nor did it imply (much less state) that some different redressability standard applied to claims for declaratory relief. Indeed, it is without question that "[t]he requirements for a justiciable case or controversy are no less strict in a declaratory judgment proceeding than in any other type of suit." *Ala. State Fed'n of Labor, Local Union No. 103 v. McAdory*, 325 U.S. 450, 561 (1945) (citations omitted). Rather, it simply asked whether those identical redressability principles apply differently to cases of declaratory relief such that it is possible to have standing for declaratory relief, but not injunctive relief. It is. *See Doe v. Stincer*, 175 F.3d 879, 887 n.6 (11th Cir. 1999) (concluding that the plaintiff had standing to sue the state Attorney General even assuming that he "lack[ed] the necessary enforcement authority to support the grant of injunctive relief enjoining the statute's enforcement" because "a favorable ruling could result in a declaratory judgment against the Attorney General holding the Florida statute invalid").

enforcement of the provision at issue." *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) (emphasis added) (citations omitted). If relief is sought against an official who cannot remedy the plaintiff's alleged injury, there is no "'case or controversy' *between himself and the defendant[s]* within the meaning of Art[icle] III." *Scott v. Taylor*, 405 F.3d 1251, 1259 (11th Cir. 2005) (Jordan, J., concurring) (emphasis added) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

B

Injunctive relief will be addressed first. The amended judgment enjoined AHCA "from enforcing [§ 409.910(17)(b)] in its current form." *Gallardo*, 2017 WL 1405166, at *11. Yet AHCA states that it cannot enforce that injunction because it does not "decide what burden of proof applies or whether the recipient has satisfied that burden"; that task is reserved for DOAH. ECF No. 44, at 24. While this Court recognizes and agrees that AHCA does not apply the clear and convincing burden, that fact is not determinative of the standing question.

Common sense dictates that courts cannot force a defendant "to act in any way that is beyond [the defendant's] authority to act in the first place." *Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir.

2001); *see also Swan v. Bd. of Educ. Of City of Chicago*, 956 F. Supp. 2d 913, 918 (N.D. Ill. 2013) ("[W]here . . . a plaintiff seeks an injunction against a defendant, he or she must demonstrate that the defendant to be enjoined has the authority to effectuate the injunction." (citations omitted)). That is because, absent such authority, the defendant would be "powerless to remedy the alleged injury." *Scott*, 405 F.3d at 1259 (citations omitted). In other words, enjoining such a defendant "would be a meaningless gesture." *Bronson v. Swensen*, 500 F.3d 1099, 1112 (10th Cir. 2007).

And this Court was well aware of that fact when it enjoined AHCA from enforcing the current iteration of the reimbursement statute. By no means did it intend to enjoin AHCA from requiring a recipient to overcome the formula-based allocation with clear and evidence for that recipient to be successful—that would be an exercise in futility. Rather, it simply meant to enjoin AHCA from seeking reimbursement for past medical expenses through portions of a recipient's recovery that represents future medical

expenses either directly from the recipient[9] or through DOAH.[10] By extension, that also means AHCA cannot seek reimbursement based on the formula-based allocation when doing so would allow it to obtain more than that which it is entitled to. Those are both tasks that AHCA—which is responsible for administering Medicaid and asserting Medicaid liens—"ha[s] *some connection* with . . . ." *Socialist Workers Party*, 145 F.3d at 1248 (emphasis added) (citations omitted).[11] Therefore, AHCA is properly enjoined from "seeking reimbursement of past Medicaid payments from portions of a recipient's recovery that represents future medical expenses." *Gallardo*, 2017 WL 1405166, at *11.[12]

---

[9] A lien only makes it to AHCA if the recipient contests it. § 409.910(17)(b), Fla. Stat. (2016). Thus, for the vast majority of liens that go uncontested, AHCA is the only entity involved in the reimbursement process.

[10] For simplicity sake, this Court will refer to this as the "reimbursement portion of the judgment."

[11] On this point, the cases cited by AHCA are distinguishable. Take *Socialist Workers Party v. Leahy*, 145 F.3d 1240 (11th Cir. 1998). There, the plaintiff lacked standing to bring suit against certain defendants because they lacked the authority to enforce the challenged statutes. *See id.* at 1248 (denying standing for injunctive relief because the relevant defendants "ha[d] no authority to enforce" the challenged statute). But AHCA wields such authority. For example, it "is the Medicaid agency for the state, as provided under federal law[,]" § 409.901(2), Fla. Stat. (2016), and is permitted "as a matter of right, in order to enforce its rights" to "institute, intervene in, or join any legal or administrative proceeding in its own name . . . ." § 409.910(11), Fla. Stat. (2016).

[12] For that same reason, declaratory relief is proper as well.

With that said, this Court is not so prideful that it will not acknowledge its mistakes. It freely admits that, at least with regards to the injunction's scope, the prior judgment is not a model of clarity. It will therefore be amended to clarify that it does *not* extend to the portion referencing the reimbursement statute's clear and convincing burden.

C

One issue therefore remains: whether it was nonetheless proper for this Court to declare that the reimbursement statute's clear and convincing burden is preempted by the federal Medicaid Act even though DOAH—not AHCA—applies that standard. It was.

Declaratory relief is appropriate when a favorable ruling for one party may result in "a change in a legal status . . . and the practical consequence of that change would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered." *Utah v. Evans*, 536 U.S. 452, 464 (2002) (citations omitted). Generally, the availability of such relief hinges on the declaration's capacity to secure redress "*through* the court, but *from* the defendant." *Canup v. Chimpan– Union, Inc.*, 123 F.3d 1440, 1443 (11th Cir. 1997) (emphasis in

original) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)). But it isn't always so cut and dried; rather, standing is also appropriate if the redress is effectuated by an unnamed third party or parties, the steps necessary to effectuate that redress are "purely mechanical," and it is "substantially likely that the [third party or parties] would abide by an authoritative interpretation" of the court's ruling. *Evans*, 536 U.S. at 463–64 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992)).

An example is helpful. In *Evans*, Utah brought suit against the Census Bureau and the Secretary of Commerce seeking, among other things, a declaration that a certain method of "imputing" census information—specifically, the number of people living in a certain household—violated federal law. *Id.* at 459.[13] At bottom, Utah argued that "imputing" the size of those households that the Census Bureau lacked information about caused it to receive a less favorable apportionment of congressional representatives than if the number of individuals living in those

---

[13] The process at issue in *Evans* is, to put it lightly, dizzying. Suffice it to say that Census Bureau employees would attempt to obtain household information through a variety of different channels. If those attempts were unsuccessful, the Bureau would "impute" the relevant information—including the number of people living in the unknown household—by inferring the unknown household's characteristics from those of a nearby one. *Evans*, 536 U.S. at 457–58.

households was simply counted as "zero." *Id.* at 458. North Carolina, which benefited from such "imputing," argued that a favorable ruling would not redress Utah's asserted injury. *Id.* at 459. That was because such redress would require a perfectly executed domino effect, yet some of those other dominoes were not named parties: the Secretary of Commerce would have to create a new report and submit it to the President, who would then transmit that report to Congress, and finally (after some time) the Clerk of the House of Representatives would notify each individual state how many congressional seats it was entitled to. *Id.* at 461. Thus, according to North Carolina, Utah's asserted redress was *through* the Court, but not *from* the defendants. *See id.* (restating North Carolina's argument that the ultimate relief "cannot help bring about th[e] ultimate 'redress'").

But the Supreme Court disagreed. It reasoned that a ruling in Utah's favor would force the Secretary of Commerce to create a new report. *Id.* at 463. If that report "contain[ed] a different conclusion about the relative populations of North Carolina and Utah," then it would eventually go into effect. *Id.* It was immaterial that other dominoes needed to fall with absolute precision for that to occur; those subsequent "apportionment-

23

related steps would be purely mechanical . . . ." *Id.* And, under those circumstances, it was "substantially likely that the President and other executive and congressional officials would abide by an authoritative interpretation of the census statute and constitutional provision . . . ." [14] *Id.* at 464 (quoting *Franklin*, 505 U.S. at 803). In other words, a favorable ruling "would amount to a significant increase in the likelihood that the plaintiff would obtain relief that directly addresses the injury suffered." *Id.* at 564.

Similar to *Evans*, a declaration that the reimbursement statute's clear and convincing burden is preempted by federal law would also significantly increase the likelihood that Gallardo would obtain the redress she seeks. Of course, unlike the reimbursement portion of the prior judgment, this Court's declaration that the clear and convincing burden is preempted in this type of scenario would require additional steps to redress Gallardo's injury; namely, DOAH not requiring Gallardo to disprove the reimbursement statute's formula-based allocation with clear and convincing evidence in Gallardo's administrative

---

[14] That was so even though the President was "not expressly required to adhere to the policy decisions reflected in the Secretary [of Commerce]'s report." *Franklin v. Massachusetts*, 505 U.S. 788, 799 (1992).

proceeding. But that step is "purely mechanical." *Id.* at 463. What is more, though, is that DOAH—which is, in effect, a quasi-judicial body[15]—is substantially likely to "abide by an authoritative interpretation[,]" *id.*, at 464, from this Court (and through AHCA) that it cannot apply such a burden.

There is more. Even if the additional steps were not "purely mechanical" such that *Evans* applied, *id.*, this Court could nonetheless assume that DOAH "will give full credence" to this Court's ruling. *Roe v. Wade*, 410 U.S. 113, 166 (1973); *see also Phelps v. Powers*, 63 F. Supp. 3d 943, 958 (S.D. Iowa 2014) (suggesting that declaratory relief was sufficient "based on the assumption that the Iowa prosecutorial authorities will give full credence to th[e] Court's holding"). That would also make declaratory relief appropriate. *See Roe*, 410 U.S. at 166; *Phelps*, 63 F. Supp. 3d at 958.

AHCA's pleas to the contrary are unpersuasive. It cites cases like *Nova Health Systems v. Gandy*, 416 F.3d 1149 (10th Cir. 2005), to argue that Gallardo lacks standing for declaratory relief

---

[15] *See Fla. State Univ. v. Hatton*, 672 So.2d 576, 579 (1st DCA 1996) (stating that DOAH hearing officers are "quasi-judicial officer[s] of a quasi-judicial forum").

as to the reimbursement statute's clear and convincing burden. In that case, an Oklahoma statute provided that those who performed an abortion on a minor without parental consent or knowledge were liable "for the cost of any subsequent medical treatment such minor might require because of the abortion." *Id.* at 1153 (citation omitted). The plaintiff filed suit against four "Oklahoma public officials whose functions include overseeing certain state medical institutions" seeking, among other things, a declaration that the statute was unconstitutional. *Id.* at 1153–54. Those four defendants, however, did not represent the *only* institutions where subsequent medical treatment for those minors took place; they were just four big-name players. *Id.* at 1157, 1159. That made it "entirely speculative" that a declaration in the plaintiff's favor would redress its injury. *Id.* at 1159. Such relief was therefore inappropriate. *See id.* (rejecting the argument "that a favorable declaratory judgment against the[] defendants would redress its injury by deterring other potential litigants from relying on [the statute at issue], even in state court").

But that case, like the other similar cases that AHCA relies on, is distinguishable on two fronts. First, it ignores *Evans* (and, for that matter, *Roe* as well). Instead, it—and AHCA—cites

26

Scalia's concurrence in *Franklin* for the proposition that "[r]edressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power." *Id.* (quoting *Franklin*, 505 U.S. at 825 (Scalia, J., concurring in the judgment)). But that concurrence persuaded neither the *Franklin* plurality nor the *Evans* Court. This Court is at a loss as to why it should apply such logic here. Second, unlike *Gandy*, there aren't a myriad of other parties who can assert liens against a Florida Medicaid recipient's recovery, thus kick starting the process to possibly bring the recipient before DOAH to challenge that lien. Who else could be expected to assert such a lien, and then allow the subsequent "purely mechanical" steps to take place such that the recipient could receive the type of redress sought here? The answer is simple: AHCA, and only AHCA. *See* ECF No. 5, at 1 (admitting that AHCA is responsible for enforcing Medicaid liens).

## D

In short, AHCA is absolutely correct that it cannot be enjoined from requiring a recipient to overcome the formula-based allocation with clear and convincing evidence for that recipient to

be successful. DOAH applies that standard, not AHCA. The prior judgment will therefore be amended to clarify the injunction's scope. But that doesn't divest this Court of standing to address the reimbursement statute's clear and convincing burden. Rather, it properly declared that applying such a burden—at least in certain circumstances—runs afoul of and is therefore preempted by federal law. AHCA's motion is therefore **GRANTED** in part and **DENIED** in part.

Accordingly,

**IT IS ORDERED:**

1. AHCA's Motion to Alter or Amend the Judgment and for Relief from Judgment, ECF No. 44, is **GRANTED** in part and **DENIED** in part.

2. AHCA's motion is **GRANTED** to the extent that it seeks an amendment clarifying the injunction's scope.

3. The balance of AHCA's motion is **DENIED**.

4. The Clerk shall enter a second amended judgment stating:

   Gianinna Gallardo, an incapacitated person, by and through her parents and co-guardians, Pilar Vassallo and Walter Gallardo, successfully proved that portions of § 409.910(11)(f), Fla.

Stat. (2016) and § 409.910(17)(b), Fla. Stat. (2016) are preempted by federal law.

It is declared that the federal Medicaid Act prohibits the State of Florida Agency for Health Care Administration from seeking reimbursement of past Medicaid payments from portions of a recipient's recovery that represents future medical expenses. The State of Florida Agency for Health Care Administration is therefore enjoined from doing just that: seeking reimbursement of past Medicaid payments from portions of a recipient's recovery that represents future medical expenses.

It is also declared that the federal Medicaid Act prohibits the State of Florida from requiring a Medicaid recipient to affirmatively disprove § 409.910(17)(b)'s formula-based allocation with clear and convincing evidence to successfully challenge it where, as here, that allocation is arbitrary and there is no evidence that it is likely to yield reasonable results in the mine run of cases.

**SO ORDERED on July 18, 2017.**

**s/Mark E. Walker**
**United States District Judge**
